IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSE R. HERNANDEZ-PEREZ,                           CV 04-1810-KI

               Petitioner,                OPINION AND ORDER

    v.

ROBERT SCHEIDLER,
Superintendent, Two Rivers
Correctional Institution,


             Respondent.

     FRANCESCA FRECCERO
     Assistant Federal Public Defender
     101 SW Main Street, Suite 1700
     Portland, OR  97204

         Attorney for Petitioner

     HARDY MEYERS
     Attorney General
     DENIS M. VANNIER
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, OR  97301-4096

         Attorneys for Respondent

KING, Judge:

Petitioner, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, petitioner's amended habeas corpus petition (#35) is denied.

## FACTUAL BACKGROUND

Following a guilty plea, petitioner was convicted on July 31, 2002 of Assault in the Second Degree and sentenced to 70 months imprisonment.  He was originally indicted on December 24, 2001, for one count of Assault in the Second Degree, two counts of Felony Assault in the Fourth Degree, and one count of Assault in the Fourth Degree, for  breaking his wife's jaw in the presence of her two small children.  Resp. Ex. 108.  Following negotiations, petitioner agreed to plead guilty to a single new count of Assault in the Second Degree, which made him potentially eligible for a downward departure from the otherwise-applicable 70-month minimum sentence.[1]  The new count alleged only that

---

[1] Under Oregon law, a person convicted of Assault in the Second Degree must receive a mandatory minimum sentence of 70 months unless the sentencing court finds the following four factors: (1) that "the victim was not physically injured by means of a deadly weapon," (2) that the "victim did not suffer a significant physical injury," (3) that "the defendant does not have a previous conviction for a crime listed in [Or. Rev. Stat. § 137.712(4)]," and (4) that "a substantial and compelling reason under the rules of the Oregon Criminal Justice Commission justifies the lesser sentence."  Or. Rev. Stat. §§ 137.700,

petitioner caused "physical injury" to the victim by means of a
"dangerous weapon," leaving petitioner free to argue that the
victim had not suffered a "significant physical injury" within
the meaning of the departure statute.  Resp. Ex. 109.  Under the
terms of the agreement, if petitioner successfully asserted that
he had not caused "serious physical injury" to the victim he
would receive the "presumptive sentence" under the guidelines,
between 34 and 36 months.  Resp. Ex. 103 at 6-10.

The plea proceedings took place on May 23, 2002.  Resp. Ex.
103.  A Spanish language interpreter was present but petitioner's
counsel informed the court that his client wished to waive his
right to an interpreter and proceed in English.  Id. at 3-5.
After inquiring into petitioner's understanding of English, the
court accepted petitioner's waiver, but told him, "if something
comes up to where you don't understand, you have to waive your
hand at me or somehow let us know."  Id. at 5.

The prosecutor explained the terms of the plea agreement to
the court.  The court asked petitioner whether he understood
everything the prosecutor said and petitioner replied "Yes."  Id.
at 11-12.  The court then observed that during the prosecutor's
presentation petitioner said "no."  Id. at 12.  Petitioner
explained that he disagreed with the prosecutor's statement that

---

137.712.

he hit the victim with his fist." Id.  The court reminded
petitioner that for him to plead guilty to Assault in the Second
Degree he would have to admit that he used his hand as a
dangerous weapon. Id. at 12.  The court recessed so petitioner
could confer with counsel "to make sure that [petitioner] is
doing what he wants to do and understands what the law requires."
Id. at 13.  When the hearing resumed petitioner's counsel
informed the court that an interpreter was present to assist
petitioner "as a standby."  Resp. Ex. 103 at 14.  Petitioner's
counsel then explained that his client was "not convinced that
his hand is a dangerous weapon" and therefore wanted to proceed
with an "Alford type plea."  Id. at 15.  He stated:

> I can represent that my client still wants to proceed with
> this deal as it exists in that there are certainly elements
> of it that he's not happy with, but overall given the deal
> itself and the advantages and disadvantages that are
> present, he still wishes to proceed with this sentencing so
> that we can argue that this was not a significant physical
> injury and that it is in his best interest to accept the
> deal because of that fact.

Id. at 15.  The court agreed that an Alford plea was acceptable
under the circumstances, and asked petitioner if everything his
attorney said was correct. Id. at 15-16.  Petitioner replied,
"Yes." Id.  However, when the court asked petitioner whether he
was prepared to waive indictment on the new Information charging
him with Assault in the Second Degree petitioner again replied
that he disagreed his hand was a dangerous weapon. Id. at 16-17.

4 - OPINION AND ORDER

Accordingly, the court again recessed for petitioner to confer with his counsel. Id. at 18.

Following the second recess petitioner's attorney stated:

> I believe we were at the point where my client agrees that...he did cause physical injury with his hand to Ann Hernandez and that there is a possibility that his hand was used in the capacity of a dangerous weapon, and he's willing to admit those things. I think that with that and further information coming from the State and my client's desire to still accept this deal, that we can proceed primarily as an Alford plea.

Id. at 19. The court again asked petitioner whether he waived Indictment, and this time petitioner said, "Yeah." Id. at 21. After the District Attorney's Information was read aloud to petitioner the court asked him whether he waived his advice of rights. Id. Petitioner agreed that he did. Id. The court then explained petitioner's maximum exposure. He stated:

> Ten years in prison or a $200,000 fine is the very maximum allowed by law. If the sentence is a Measure 11 sentence, it would be 70 months in prison and if it's not sentenced as a Measure 11 sentence it would be somewhere between 34 and 36 months in prison.

Id. at 23. When asked, "Do you understand those things too?" petitioner replied, "Yes." Id. When asked if anyone had made promises to him that had not been discussed in court petitioner told the court:

> No, they give me an idea like you said 70 month sentence, about less sentence than that and just the same stuff. Nobody has promised like I say you go home right now or, you know, you're going to be deported or your case is going to be dismissed. I have no promises.

Id. at 24-25.  The court then proceeded to accept petitioner's

guilty plea.  The court asked petitioner, "Am I correct that when

[your counsel] said you were willing to admit to it, that you

caused the injury to her and did it with your hand, you admit to

that?"  Id. at 26.  Petitioner replied, "Yes."  The colloquy

continued:

> The Court: And you pleaded guilty to using your hand as a
> dangerous weapon, you're not really sure you're guilty of
> that, that you're pleading guilty to it to get the benefit
> of - -
>
> The Defendant: Exactly.

Id. at 27.  The prosecutor then provided the remaining factual

basis for the plea and the following exchange occurred:

> The Court: That's a sufficient factual basis for me to
> accept the guilty plea as an Alford plea, so Mr. Hernandez,
> do you want me to accept the guilty plea?
>
> [Petitioner's Counsel]: Judge, I can say that my client may
> disagree with some of the things that Mr. Fun said but that
> we are not contesting those facts in order to proceed as an
> Alford plea.  But I do know that he - again, if we're
> proceeding in that way, he would disagree with at least some
> of the facts but he would not disagree with it.
>
> The Defendant: I disagree on some of it, yes.
>
> The Court: Okay.  Do you want me to accept the guilty plea
> then?
>
> The Defendant: Yeah, but I -
> The Court: Excuse me, I've got to do one thing at a time.
> Do you want me to accept the guilty plea, yes or no?
>
> The Defendant: Uh-huh.
>
> The Court: Yes?

The Defendant: He's saying that the children were present and that's not true.

The Court: Mr. Hernandez, I need to get an answer to this question, and I don't mean to say the answer has to be one way or the other, that's completely for you to say. But the question is, do you want me to accept your guilty plea and find you guilty? Just yes or no. Yes?

The Defendant: Yes. But – –

The Court: Okay. I'll do that. * * *

Id. at 29-30.

During the sentencing hearing the victim testified that her jaw was fractured in three different places. Resp. Ex. 103 at 41. She testified that following reconstructive surgery her jaw was wired shut for four weeks, and was numb for an additional three to four weeks. Id. She further stated that she was unable to consume solid food for about five weeks. Id. at 44. The victim's father corroborated her testimony. Id. at 54.

Petitioner also testified. He stated that although he hit the victim he believed someone else entered their apartment and broke her jaw because he didn't believe he hit her on the side her jaw broke, or with enough force to break it. Id. at 76-77. Petitioner testified that he believed his wife was involved with another man, and he believed the victim was with him the same day her jaw was broken. Id. at 75. Petitioner's sister also testified on his behalf. She stated that the victim never

complained to her about the way petitioner treated her before this incident, and that she had never witnessed petitioner act inappropriately around his children. Id. at 59-66.

The sentencing court found the victim had suffered a "significant" physical injury, as defined by the statute, and therefore imposed the 70-month sentence. Id. at 81.

## PROCEDURAL BACKGROUND

Petitioner did not directly appeal his conviction. He filed a formal petition for post-conviction relief (PCR) in Umatilla County Circuit Court case no. CV02-1171, but the court denied relief. Resp. Exs. 104, 114. Pursuant to State v. Balfour[2], 311 Or. 434, 451, 814 P. 2d 1069, 1080 (1991), petitioner filed an appeal with the Oregon Court of Appeals (Resp. Ex. 115) in which he alleged one claim. The Court of Appeals granted respondent's unopposed motion for summary affirmance (Resp. Ex. 120) and the Oregon Supreme Court denied review (Resp. Ex. 118, 119).

On May 25, 2006, petitioner filed an amended petition for habeas corpus relief with this court (Doc. # 35) in which he

---

[2] If a petitioner seeks to raise claims that counsel considers to be frivolous, a Balfour brief may be submitted, containing a "Section A" statement of the case and facts, signed by counsel, and a "Section B," raising requested claims of error, signed only by petitioner.

alleged that his conviction and sentence are illegal and contrary

to the Constitution of the United States because:

> a. Petitioner participated in an Alford plea hearing
> pursuant to trial counsel's advice.  However, trial counsel
> failed to explain alternatively [sic] to Petitioner the
> consequences of those plea proceedings;

> b. Petitioner would have insisted on a jury trial had he
> been properly advised by trial counsel about the
> consequences of his plea;

> c. Petitioner was denied his right to counsel in violation
> of the Sixth and Fourteenth Amendments when trial counsel
> failed to explain adequately the consequences of
> Petitioner's Alford plea and plea proceedings, resulting in
> prejudice to Petitioner.

Respondent moves this court to deny relief on the basis that

petitioner's claims are procedurally defaulted and,

alternatively, that they lack merit.  For the reasons that

follow, this habeas corpus petition is denied.

## DISCUSSION

Generally, a state prisoner must exhaust all available state

court remedies either on direct appeal or through collateral

proceedings before a federal court may consider granting habeas

corpus relief.  See 28 U.S.C. § 2254(b)(1).  A petitioner must

seek discretionary review in the state's highest court in order

to fully exhaust his state remedies.  O'Sullivan v. Boerekel, 526

U.S. 838 (1999).

To satisfy the exhaustion requirement, a prisoner must

fairly present his federal claims to the state courts.  Baldwin

v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).  A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal."  Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996).  It is not enough that all the facts necessary to support the federal claim were available to the state courts, or that somewhat similar claims were made.  Anderson v. Harless, 459 U.S. 4, 6, (1982).

Petitioners must have also presented their federal claims to the state courts in a procedural context in which the merits of the claim will be considered.  Castille v. Peoples, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to state Supreme Court).

Respondent asserts that petitioner's instant claims of ineffective assistance of counsel are procedurally defaulted because petitioner did not fairly present them to the state appellate courts when he appealed the PCR trial court's judgment.  Resp. Exs. 115, 118.  Petitioner filed a Balfour brief with the Oregon Court of Appeals in which he claimed solely that trial counsel was ineffective for failing to investigate and present evidence that petitioner lacked the requisite intent to commit the crime of Assault in the Second Degree.  Resp. Ex. 115.

Petitioner did not allege that counsel had inadequately explained the consequences of his plea, as he does here.  Respondent moved for summary affirmance on the ground that petitioner's sole claim for relief had not been raised in the PCR trial court and was therefore unpreserved.  Resp. Ex. 116.  Petitioner did not oppose the motion.  Accordingly, the Oregon Court of Appeals granted the motion and dismissed the appeal.  Resp. Ex. 117.  Petitioner made the same claim to the Oregon Supreme Court (Resp. Ex. 118), which denied review (Resp. Ex. 119).

Petitioner argues that his claims are not procedurally defaulted because although he was represented by counsel on appeal to the Oregon appellate courts, he was effectively *pro se* because he prepared the "Section B" portion of the <u>Balfour</u> brief. Accordingly, he argues his filings should be read with leniency for purposes of the exhaustion requirement.  When read in this light, petitioner argues he fairly presented his instant claims by contending that trial counsel failed to investigate his claim and advised him to plead guilty though the evidence did not support the crime pleaded to "because the element of intent is altogether lacking in this incident."  Resp. Ex. 115 at 3.

Petitioner does not cite any authority to support reading the <u>Balfour</u> brief with the leniency afforded *pro se* submissions. Petitioner points to <u>Sanders v. Ryder</u>, 342 F.3d 991, 999 (9th Cir. 2003), a case that recites the rule that *pro se* petitions

are held to a more lenient standard than counseled petitions.
However, Sanders does not hold that this standard should be
applied to briefs filed under the procedures outlined in State v.
Balfour. Balfour briefs are counseled briefs whereby appointed
counsel fulfills his or her ethical and constitutional
obligations to the client by advancing the appeal, including
arguments counsel believes to be frivolous.  311 Or. at 451-52,
814 P.2d at 1080-81.  Although petitioner prepares the arguments,
he does so after receiving the benefit of appointed counsel's
thorough review and legal assessment of his case.  As respondent
notes, the Court in Reese v. Baldwin characterized a petitioner
who filed a Balfour brief in the Oregon Court of Appeals during
his post-conviction appeal as "represented by appointed counsel."
541 U.S. at 29.  For these reasons I am not persuaded that
petitioner's post-conviction filings should be read with leniency
for purposes of the exhaustion requirement.

       In any event, even a more lenient reading of petitioner's
appellate briefs would not save him from procedural default.  For
purposes of determining exhaustion, this court inquires whether a
pro se filing, when read as a whole, reasonably alerted the state
courts to the legal and factual basis for petitioner's federal
claim.  Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir.
2005); Sanders v. Ryder, 342 F.3d 991, 999 (9th Cir. 2003), cert.

denied, 541 U.S. 956 (2004); Peterson v. Lampert, 319 F.3d 1153,
1159 (9th Cir. 2003).

In his post-conviction appellate brief petitioner made one
assignment of error: "The post conviction court erred in denying
petitioner post-conviction relief."  Resp. Ex. 115.  In the
argument section he explained that trial counsel

> failed to thoroughly investigate petitioner's case and
> gather evidence that would have controverted the State's
> case against petitioner...advising [him] instead to enter a
> plea of guilty when the evidence, at most, would have
> supported a conviction for Assault in the Third Degree
> because the element of intent is altogether lacking in this
> incident.

Id.  His brief went on to state that trial counsel should have
presented to a jury the information he allegedly failed to
investigate.   Id. at 4.  None of the above would have alerted the
state court to the factual basis of his instant claim, that
counsel failed to adequately explain the consequences of pleading
guilty to Assault in the Second Degree.

In his reply memorandum (#39), petitioner points out that he
also attached a copy of his PCR petition to his post-conviction
appellate brief, wherein he asserted that trial counsel "failed
to adequately represent Petitioner at his change of plea hearing"
and that trial counsel "failed to provide Petitioner with
professional advise [sic] and/or guidance regarding the charges
against him, including but not limited to explaining the
ramifications of pleading guilty."  Resp. Ex. 104 at 3-4.

13 - OPINION AND ORDER

Petitioner now argues that "obviously [he] was complaining that counsel failed to advise him of the consequences of his plea proceedings."  (#39 at 3).

If petitioner's contention is that by attaching his PCR petition to his post-conviction appellate brief he alerted the state court to his current claims, he is mistaken.  It is well settled that the nature of a state prisoner's federal claim must be apparent on the face of the post-conviction appellate brief itself.  Baldwin, 541 U.S. at 32 (claim defaulted if court has to "read beyond a petition or a brief" to find petitioner's federal claim); see also Castillo, 399 F.3d at 1000 (to exhaust a claim petitioner must present the federal constitutional issue within the "four corners" of the appellate briefing); compare Wells v. Maass, 28 F.3d 1005 (9th Cir. 1994)(petitioner fairly presented federal constitutional issue to state's highest court by referring in petition for review to issues raised in his Oregon Court of Appeals brief).  Accordingly, petitioner's instant claims for relief are defaulted.

Since petitioner has not alleged cause and prejudice to excuse his procedural default (O'Sullivan, 526 U.S. at 848; Netherland, 518 U.S. at 161-62), or made a showing of actual innocence (Coleman v. Thompson, 501 U.S. 722 (1991)), he is not entitled to federal habeas corpus review.

## **CONCLUSION**

Based on the foregoing, petitioner's amended habeas corpus petition (#35) is denied.

IT IS SO ORDERED.

DATED this __3rd__ day of January, 2007.

```
                                  /s/ Garr M. King
_____Garr M. King
                                 United States District Judge
```